IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| JESSICA CHIDESTER,<br>   Plaintiff,<br><br>vs.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | AMENDED[1] REPORT &<br>RECOMMENDATION<br><br>Case No. 1:11-CV-00061<br><br>United States District Court<br>Chief Judge Ted Stewart<br><br>Magistrate Judge Dustin B. Pead |

  This matter was referred to Magistrate Judge Dustin Pead by District Chief Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Currently pending before the Court is Plaintiff's appeal of the Commissioner of Social Security's decision denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-33, 1381-1383f. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court recommends that the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

  On October 2, 2006, Plaintiff applied for DIB and SSI, alleging disability since May 20, 2001, due to bipolar disorder, anxiety disorder, agoraphobia, and depression (Tr. 159-71,

---

[1] The original version of this Report & Recommendation, docketed on February 19, 2013, contained several formatting errors. Accordingly, the Court issues this Amended Report & recommendation in order to correct the formatting errors contained in the original document.

[2] This case was originally assigned to Magistrate Judge Samuel Alba. It was subsequently transferred to Magistrate Judge Brook Wells, then to Magistrate Judge Evelyn Furse. Thereafter, it was reassigned to Magistrate Judge Dustin Pead.

228). Her applications were denied initially and upon reconsideration (Tr. 104, 107, 113, 116). After a hearing (Tr. 63-99), an administrative law judge (ALJ) issued a decision finding Plaintiff was not disabled within the meaning of the Act (Tr. 7-23). The Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481.[3] This appeal followed.

## STATEMENT OF RELEVANT LAW

I.      **Definition of disability under the Act.**

The Act states that an individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve (12) consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

II.     **Process for determining disability under the Act.**

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or medically equaled the severity of a listed impairment; (4) could return to [her] past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4).

---

[3] All citations to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Subsequent citations are to part 404, which addresses DIB, and have parallel citations in part 416, which addresses SSI.

**III.     Standard of review.**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation and citation omitted).  The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *Id.*  Where the evidence as a whole can support either the agency's decision or an award of benefits, the court must affirm the agency's decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## DISCUSSION

**I.     The ALJ reasonably evaluated Plaintiff's testimony and similar statements from Kari Sabin.[4]**

Plaintiff argues that the Court erred in evaluating her testimony and similar statements from Kari Sabin.  While the Court sympathizes with Plaintiff's arguments, they are ultimately unpersuasive under substantial evidence review.

Credibility determinations are for the ALJ to make based upon all of the evidence before him.  *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (when determining a claimant's credibility and assessing residual functional capacity, the ALJ properly considered "all" of the evidence, both medical and nonmedical, as he was required to do).  In this case, the ALJ reviewed the entire record and reasonably found Plaintiff's subjective complaints were not entirely credible (Tr. 18-19).

In making this determination, the ALJ properly set forth the specific evidence that he relied on in evaluating credibility.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2004)

---

[4] The ALJ refers to the lay witness as "Kari Sabin" in his decision. (Tr. 19). It should be noted that in her statement the lay witness refers to herself as "Kari McCarter". (Tr. 211).

(finding an ALJ properly rejected a claimant's subjective statements where he identified the specific evidence relied upon in evaluating credibility).  For instance, the ALJ found that Plaintiff's assertions about extreme limitations in functioning were not supported by the medical record, which reflected minimal objective findings and showed that Plaintiff's symptoms generally responded to medication (Tr. 19, 21; *see* Tr. 238, 240, 286, 317, 325, 328, 332, 336-42, 351, 381, 383).  *See* 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ must consider effectiveness of treatment); *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (affirming finding that the claimant's mental impairments, while present to some degree, were "fairly well controlled" with medication).

The ALJ also found that Plaintiff's assertions about extreme limitations in functioning were undermined by evidence of her activities (Tr. 15, 18).  For instance, the ALJ found that Plaintiff's testimony that she spent half of any given month curled up on her bed was contradicted by evidence that she babysat for her roommates on a daily basis (Tr. 18; *compare* Tr. 71-72 *with* Tr. 194-95).  And, Plaintiff's assertion that she was unable to leave her house due to panic attacks and anxiety was contradicted by evidence that, with medication, Plaintiff could engage in activities such as shopping (Tr. 15 (*citing* Tr. 210)).  *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (ALJ must consider evidence of claimant's activities), 404.1529(c)(4) (ALJ must consider inconsistencies in the evidence); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (noting discrepancies between the claimant's prior statements about his daily routine and activities and his hearing testimony).

In addition to evaluating Plaintiff's testimony, the ALJ considered a similar statement from Plaintiff's roommate, Kari Sabin (Tr. 19).  The ALJ said that he evaluated this evidence in accordance with Social Security Ruling (SSR) 06-03p, but discounted it because Ms. Sabin had a

close relationship with Plaintiff (Tr. 19).  Hence, the ALJ reasonably considered Ms. Sabin's statement.  *See* SSR 06-03p, 2006 WL 2329939, at *6 (appropriate to consider the nature and extent of relationship between lay witness and claimant); *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996) (noting the same principle, and affirming the ALJ's decision where it was clear that the ALJ considered the claimant's wife's testimony); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a reviewing court has no reason to depart from its general practice of taking a lower tribunal at its word when it declares that it has considered a matter).

Although the ALJ discounted Plaintiff's testimony and similar statements from Ms. Sabin, the ALJ still found that Plaintiff should be limited to a reduced range of unskilled work, with low concentration levels, no work with the general public, minimal contact with supervisors and co-workers, and only minimal changes in a routine work setting (Tr. 17).

Plaintiff's arguments regarding the ALJ's credibility finding ask the Court to reweigh the evidence, which it cannot do under substantial evidence review.  *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).  Because the ALJ's credibility finding was supported by substantial evidence and legally sound, the Court recommends that the ALJ's decision be affirmed.

**II.    The ALJ reasonably assessed opinions from Dr. Grow, Dr. Cohn, and Nurse Ramos, and GAF scores.**

Plaintiff argues that the ALJ erred in evaluating opinions of Dr. Grow, Dr. Cohn, and Nurse Ramos, and GAF scores, which were not accompanied by opinions about Plaintiff's ability to work.  However, Plaintiff's arguments are not persuasive under substantial evidence review.

    A. *The ALJ's decision was consistent with opinions from Dr. Grow and Dr. Cohn.*

  The ALJ did not reject the opinion of either Dr. Grow or Dr. Cohn. Instead, the ALJ gave great weight to Dr. Grow's opinion (Tr. 20), and persuasive weight to Dr. Cohn's opinion (Tr. 19). Moreover, the ALJ made findings that were consistent with both psychologists' opinions. To the extent that Dr. Grow opined that Plaintiff could understand, remember, and carry out simple three-step instructions (Tr. 354), the ALJ found that Plaintiff could do unskilled work with simple instructions (Tr. 17). And, to the extent that Dr. Cohn and Dr. Grow opined that Plaintiff had limitations in interacting with others (Tr. 361), the ALJ found that Plaintiff should not work with the general public, and should have only minimal contact with supervisors and co-workers on the job (Tr. 17). Further, in finding that Plaintiff could do work in the national economy, the ALJ relied on unskilled jobs that do not involve significant interaction with others (Tr. 22). *See Dictionary of Occupational Titles* (*DOT*)[5] 209.587-010, 1991 WL 371797 (addresser job description); 361.684-014, 1991 WL 672983 (laundry worker job description); 323.687-014, 1991 WL 672783 (housekeeper job description). Because the ALJ did not err in evaluating opinions from Dr. Grow and Dr. Cohn, the Court recommends that the ALJ's decision be affirmed.

    B. *The ALJ reasonably discounted Nurse Ramos' opinion.*

  The ALJ correctly observed that, as a nurse, Ms. Ramos was not an acceptable medical source (Tr. 21). *See* 20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2329939, at *2. This is significant because only an acceptable medical source (such as a doctor or psychologist) can be considered a treating source whose opinion may be eligible for controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2. In other words, a nurse such as Ms. Ramos could not be considered a treating source and her opinion could not be entitled to controlling weight. *Id.*

---

[5] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed., rev. 1991).

Nevertheless, the ALJ considered Ms. Ramos' opinion.  The ALJ reasonably found that Ms. Ramos' opinion generally reiterated Plaintiff's subjective complaints, and was not supported by objective observations or testing (Tr. 21; *see* Tr. 330-33).  Thus, the ALJ gave a valid reason for discounting Nurse Ramos' opinion, which was supported by substantial evidence.

In asking the Court to find that the ALJ erred in evaluating Nurse Ramos' opinion, Plaintiff is essentially asking the Court to re-weigh the evidence.  However, that is not the Court's role on substantial evidence review.  *See Lax*, 489 F.3d at 1084 (explaining that a court may neither reweigh the evidence nor substitute its judgment for that of the ALJ).  Because the ALJ's decision to discount Nurse Ramos' opinion was supported by substantial evidence and legally sound, the Court recommends that the ALJ's decision be affirmed.

    C.    *The ALJ reasonably discounted GAF scores which were not accompanied by opinions about Plaintiff's ability to do work-related activities.*

Plaintiff also asks the Court to find that the ALJ erred in evaluating GAF scores which were not accompanied by opinions about Plaintiff's ability to do work-related activities.[6]  The ALJ considered the GAF scores (Tr. 19-21), but correctly observed that a GAF score may indicate problems which do not necessarily relate to the ability to hold a job and that, without further explanation, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work (Tr. 20).  *See Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished); *Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004) (unpublished); *Zachary*

---

[6] Many of the ratings in question were assigned by social workers or nurses (*see, e.g.,* Tr. 281-82, 311, 342).  Like nurses, social workers are not acceptable medical sources.  *See* 20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2329939, at *2.  Hence, social workers are not treating sources whose opinions may be entitled to controlling weight.  SSR 06-03p, 2006 WL 2329939, at *2; *see also Seymore v. Astrue*, No. 11-5091, 2012 WL 1511754, at *1 (10th Cir. May 1, 2012) (unpublished) ("[T]he ALJ was correct in disregarding the additional GAF score of 52 since it was reported by a counselor who is not an acceptable medical source").

*v. Barnhart*, 94 F. App'x 817, 819 (10th Cir. 2004) (unpublished). Because the ALJ did not err in evaluating the GAF scores, the Court recommends that the ALJ's decision be affirmed.

**III.     The ALJ's hypothetical question posed to the vocational expert accounted for all of Plaintiff's limitations that were ultimately included in the residual functional capacity assessment.**

The ALJ, not a physician or vocational expert, is responsible for assessing residual functional capacity. *See* 20 C.F.R. § 404.1546(c) (at the ALJ hearing level, the ALJ is responsible for assessing residual functional capacity); *Howard v. Barnhart*, 379F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's [residual functional capacity] from the medical record." (citations omitted)); *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (ALJ, not vocational expert, is responsible for determining residual functional capacity).

After evaluating the record as a whole, the ALJ reasonably determined that Plaintiff, while limited and unable to perform some jobs, had the residual functional capacity to do a reduced range of unskilled work, with:

- a low production rate;
- essentially no work with the general public;
- only minimal contact with supervisors and co-workers on the job (while having the ability to respond appropriately to supervision, co-workers, and work situations);
- only minimal changes in a routine work setting;
- low-end, unskilled work tasks;
- only simple instructions;
- only minimal changes in work instructions; and
- only simple work-related decisions

(Tr. 16-17).

At the hearing, the ALJ asked the vocational expert a hypothetical question that included all the limitations the ALJ accepted and included in his residual functional capacity assessment (Tr. 96-97). In response, the vocational expert testified that such a person could perform a significant number of jobs that existed in the national economy (Tr. 97-98). Thus, the expert's response to the ALJ's hypothetical provided substantial evidence that Plaintiff could perform work in the national economy and was not disabled. *See Qualls*, 206 F.3d at 1373 (finding no error when the ALJ relied on a hypothetical question that included all limitations ultimately included in the ALJ's residual functional capacity assessment).

Plaintiff argues that the ALJ should have used a hypothetical that assumed she would miss three to four days of work each month (Tr. 98). In support of this argument, Plaintiff relies on "moderate" limitations that state agency psychologist Dr. Cohn identified in section I of an agency Mental Residual Functional Capacity form (Tr. 377-78).

Contrary to Plaintiff's assertion, Dr. Cohn's notations in section I of the agency form did not constitute an assessment of Plaintiff's mental residual functional capacity. The Mental Residual Functional Capacity form, form SSA-4734 F4 SUP, is a standard agency form. The agency's Program Operations Manual System (POMS), section DI 24510.060, 2001 WL 1933367, explains how the agency intends the form to be used. "Section I of the form, the "summary conclusions," is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation, and does not constitute the residual functional capacity assessment." POMS DI 24510.060B.2 (emphasis added). Section III of the form is where the state agency consultant records the actual mental residual functional capacity assessment, and explains the section I "summary conclusions" in terms of the extent to which

mental capacities or functions could or could not be performed in work settings.  POMS DI 24510.060B.4.  Moreover, the POMS specifies that severity ratings, such as "moderate," do not describe function or usefully convey the extent of capacity limitations.  POMS DI 24510.065.B.1, 2001 WL 1933372.  "The Court must defer to the Programs Operations Manual System unless it is arbitrary, capricious, or contrary to law."  *Thomas v. Astrue,* No. CIV-10-450-M, 2011 WL 2580169, at *5 (W.D. Okla. May 27, 2011) (unpublished) (citing *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001)).

  Here, in completing the "summary conclusions" section of the form, Dr. Cohn checked seven boxes indicating "moderately limited" (along with 12 boxes indicating "not significantly limited," and one box indicating "no evidence of limitation in this category") (Tr. 377-78).  However, as discussed, findings in section I of the form do not constitute an assessment of functional capacity, and severity ratings, such as "moderate," and do not describe function or usefully convey the extent of capacity limitations.  *See* POMS DI 24510.060B.2, POMS 24510.065.B.1.  Although Dr. Cohn did not complete Section III of the form (Tr. 379), she did refer to a case summary (cassum) (Tr. 375), in which she opined that Plaintiff could do work that required limited public contact (Tr. 361).  Dr. Cohn never stated that Plaintiff would miss three or four days of work each month (Tr. 361, 377-79).

  Consistent with Dr. Cohn's opinion, the ALJ found that Plaintiff should have "essentially no work[] with the general public" (Tr. 17).  The ALJ further found that Plaintiff should have only minimal contact with supervisors and co-workers on the job, and should deal with only minimal changes in work instructions, minimal changes in a routine work setting, and simple work-related decisions (Tr. 17).  The ALJ's residual functional capacity finding, and similar

hypothetical to the vocational expert, accounted for all of Plaintiff's credible limitations, and all of the limitations identified by Dr. Cohn.

Having determined that the Commissioner's decision is supported by substantial evidence in the record and free from legal error, the Court recommends that the Commissioner's decision be AFFIRMED.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED to the District Court that:

1. The ALJ's initial determination and the Commissioner's final determination that Plaintiff should be denied social security benefits should be AFFIRMED (*See* Document Number 3 & 5).

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. Any objection must be filed within 14 days after being served with a copy.[8] Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 20th day of February, 2013.

_____
DUSTIN B. PEAD
UNITED STATES MAGISTRATE JUDGE

---

[8] *See* Fed. R. Civ. P. 72(b)(2).